Our last case this morning is 23-1513, Scott D. Pitta v. Dina Medeiros et al. Counsel? Please identify yourself for the record, and you may begin. Good morning, Your Honors. Scott Pitta, the appellant. If I may, I'd like to reserve one minute for rebuttal, Your Honor. Okay, you may. Thank you. Before you today is an appeal of a 12B6 motion to dismiss for failure to state a claim. At the core of the issue is a complaint for a Section 1983 deprivation of First Amendment rights. The district court erred in this case in granting the motion to dismiss in that it didn't follow the established guidelines for a 12B6 motion. The district court made several inferences in favor of the moving party in this motion and then essentially treated the motion as a motion for summary judgment. Using those improper inferences then propped up a notion that I did not have a First Amendment right to record government officials in the performance of their duties. Mr. Pitta, it's really unclear to me exactly what your argument is. It seems to be that you have an absolute right to video record what occurs during an IEP meeting about your child, and I note that the school system offered you audio recordings where the speakers would be identified, so there would be no problem with that. Are you saying that offer is irrelevant and your claim is you have a First Amendment right to video record? Yes, Your Honor. If I could, the offer from the school district was only after I had filed the initial complaint. Prior to that, it was a... Let me correct that. They did offer to allow me to record. Our objection was in these meetings there's up to 16 people, and it is very difficult to determine who is actually speaking, and we need that as an accurate record because these disputes do go on to federal court. They come through this court. In its last session, the Supreme Court heard a case regarding IEPs and the IDEA, so the record is very, very important, and that's the core issue here is that our allegations, our complaint is regarding government abuses where the school district's administrator had admitted to multiple violations of federal law, and then there was an admission that she had coerced her subordinates to then go back and re-perform evaluations where they scored our son as clinically significant. She told them to go back and redo that. But all of those discussions that we talked about in the initial meeting didn't show up in their meeting minutes. That's why we need the recordings. Okay, but let me say this. The accommodation was, the proposed accommodation, you're going to have an audio recording. If there's an audio recording, I see no reason why you could not go there and say, I would ask just for the clear record for everybody to not interrupt anybody, raise your hand, please identify yourself for the record clearly, and then you would know exactly who was speaking. You could have two people, you could have 16 people, you know, and it's done at depositions or it's, you know, in other instances. Why isn't that sufficient? I understand that, Your Honor, and I think that gets really to the core of the issue here, that the question always seems to be, why do I need to be able to record? But under a First Amendment analysis, we need to be asking, under what authority does the government have to restrict this? That's the proper order of operation. Let me go back. There are some functions, even by nominally government authorities, which the law requires not be public. There is a restriction on who can attend an IEP meeting. The government is not allowed to let third parties in, and I believe you would strenuously object if the general public were allowed into your IEP meeting. Am I correct about that? I believe, yes, Your Honor, that would be a correct assertion. Okay, so the purpose of the IEP meeting is to try to figure out what makes the most sense for your child in order to comply with the obligations put on the school system to provide your child with a fair and appropriate education. And there is no federal regulation that says that you have to record these meetings at all. They just say if you have a school system policy, they have to tell you about it. So under the law as interpreted by the federal government, in the interest of privacy of all of those involved, there is not even a recording requirement of any sort. There is a requirement that the IEP be given to you and that there be an administrative record. So there's no statutory basis that I can see for your claim. It is purely based on your reading of some prior cases involving police possible misconduct out in the public arena. So again, could you, now that I've kind of framed this, tell me what the basis is for a First Amendment assertion about what is actually said in an IEP meeting, as opposed to the minutes of the meeting, which are simply minutes? Yes, so actually from my brother's brief, he quotes essentially the only federal statute, it's not even statute, it's the comment to the federal register, where they point out that under IDEA, a public agency has the option to require, prohibit, or limit, or otherwise regulate the use of recording devices in IEP minutes. That's what's in bold. The next sentence, if a public agency has a policy that prohibits or limits the use of recording devices, that policy must provide for exceptions if they are necessary to ensure the rights of the parents. Here, the school district had no policy. The policy doesn't exist, it's not in writing. Mr. Pitt, I can understand the attack on the policy, but I have two questions. Number one, that doesn't seem to me to be a First Amendment claim, which is the claim that you've made. That's a claim that the administration of the policy has been arbitrary and capricious, which may very well be well-founded. But secondly, if that's your objection, why isn't that subject to administrative exhaustion principles? There is a complaint process. Yes, Your Honor, if I could address those. Well, Your Honor, the first part is regarding the First Amendment claim. If this policy never existed to begin with, again, we start with the question of, I see my time is up. Please answer the question. We first start with the question of, what gives the government the authority to restrict the recording? Because we are talking about recording of government officials in the performance of their duties, which this court and several other courts have held is a fundamental First Amendment right. No court has held that in a setting similar to this, where you're talking about a government function, a meeting that is essentially confidential. There's a big difference between videotaping what a policeman is doing out in the Boston Garden and videotaping an amendment. Because if you have a First Amendment right to video record this IEP meeting, why wouldn't I have the same right to walk into your IEP meeting and videotape it? The First Amendment applies equally to all citizens. Absolutely, Your Honor, but I think the very first threshold is you have to be lawfully in that location. And here, we were lawfully meeting with these school officials. So the requirement is, if it's a government function, and you are lawfully in it, you have a First Amendment right to video record? Yes, Your Honor, and to the extent that it's private. So that therefore, I, when I'm called for jury duty, in the district court, have a right to come into the jury room, video record my fellow jurors, and indeed, maybe video record what's going on in the courtroom when I'm sitting in the jury box. I mean, it all can't be that broad. Well, Your Honor, in that case, that is a restriction, that is a policy that exists that has gone through and been analyzed under the appropriate level of scrutiny. Here, on a 12B6 motion to dismiss, the trial court never applied any level of scrutiny to a policy, a policy that didn't exist. They inferred the policy existed. They inferred that it was content and viewpoint neutral. They inferred that there was no public interest in the government's behavior, which I argue is completely inaccurate when you have accusations of public officials altering and doctoring documents that become an official record. No, no, no, no. Your claim is not that they altered documents. It is that in a document labeled minutes, it omitted to detail every single interaction and provide a verbatim transcript. That's your claim. Yes, Your Honor, and it's highly suspicious that those were the portions that were omitted. Let me ask you, counsel, it seems to me... I'm sorry. Carrying on from Judge Sillia's point, therefore, every time a government body creates minutes, that violates First Amendment rights because it's not a complete transcript? No, Your Honor, what I'm saying here is that this policy that was created on the spot, because of the disagreement between myself and the school committee administrators to prevent me from making an accurate recording, that there was the deprivation of rights, Your Honor. Doesn't that sound more like a due process claim than a First Amendment? Because what you're saying is that the process that's provided to safeguard your... It's a very important interest, and I know as a parent it's so important, but is it in more due process? And again, due process is not before us, but it seems to me that you're arguing more it's a due process claim. Well, as far as the administrative process, there is no remedy for this in the administrative, on the administrative realm. And the trial court correctly held that those were other portions of the motion to dismiss, which were not raised on cross-appeal, and therefore the mootness argument and other portions of the original motion are not properly before this Court. Okay, thank you. Let's hear then for Counselor Mr. Mello. Good morning. Thank you. May it please the Court, Peter Mello, Murphy, Hesse, Toomey, and Lahane, on behalf of the defendant appellees. Although he glosses over it, the fact that an IP meeting is intensely private and confidential strictly forecloses Mr. Pitt's First Amendment claim. He bases his appeal virtually exclusively upon the premise that a person enjoys a First Amendment right entitlement to film government officials performing their duties from a vantage point in which the person making the recording is lawfully present. But even assuming for purposes of argument that he hasn't waived it procedurally, substantively, with due respect, it's just flat wrong. And we've cited Federal Register excerpts that contradict it. But even setting that aside, Glick, Martin, and all the subsequent cases that this Court has issued addressing the question, have held merely that an individual enjoys a First Amendment right to film government officials performing their duties in public spaces, as opposed to an irrefutably private space, like a room in which an IP meeting is occurring. And although the Court perhaps hasn't fully fleshed out or defined the phrase public spaces, we don't need to wrestle with that unduly or even at all in this proceeding because whatever that means, it couldn't conceivably extend to a child's private IP meeting. Nor does the underlying proposed filming activity trigger any application or protection on the First Amendment in the first instance, because it doesn't involve any news gathering or any attempt to disseminate information to members of the public on matters of a public interest. I think that's actually a kind of weaker argument. Could you go back to Edea, please, and describe for me the support for your contention that this is a private and non-public, and indeed the public by law cannot participate in the meetings that are held in order to come up with an educational plan? Well, there's obviously a whole regime of statutory and regulatory authority that governs... Yes, and I expect you to know what they are and answer my question. You are representing the school. Yes, Your Honor. So there's many regulations, but basically they provide that there's a process through which a team is assembled comprised of educators and parents and students and others who parents can choose or guardians can choose to participate in the process, and the whole objective is... Okay, so you start with there is a restriction imposed by the law on who may be the team members. That's correct, Your Honor. The public isn't welcome to attend IEP meetings. It's an intensely private, confidential process. All the materials generated in connection with the process would be student records, which are strictly confidential and protected under federal and state... But counsel, there's no question that the father of the child, which is the position Mr. Pitter is in, there's no question that he's entitled to attend, right? Yes, the child's parent is entitled to attend. He set aside the legal arguments for a moment. I mean, there's practical consequence here. What on earth is wrong with letting him make a video recording of the meeting? He wants a record of what happened so that he can better defend and protect his child's rights. What's wrong with that? That's not the question I asked. What's wrong with letting him video record it? I mean, it just seems to me that... I don't mean to minimize this dispute, but in the sense of Tempest and the Teapot, you've got a father who's got perfectly understandable interests in his child's welfare. You've got a school committee that has taken a fairly rigid position for reasons that I'm not sure that I understand, and then you have the father reacting to that by trying to blow this intensely personal contratobs into a constitutional controversy so that instead of simply dealing with what's good for the child, we're trying to reinvent barbary against Madison. It just strikes me as quite impractical. Well, I think the whole objective of the process fundamentally is to generate candid, earnest, productive discussion, and meaningful discussion, ultimately to serve the child's best interests. Participants in the process feel uncomfortable with making comments and being depicted on camera as they're making comments, to the extent that that would stunt an earnest exchange of ideas, again, ultimately to serve the student's best interests. I think it's appropriate. Even setting that aside, Your Honor, it's not a First Amendment issue, as you correctly pointed out. Any First Amendment right he enjoys with respect to that process would be shared equally among all the members of the team. Suppose, for example, and think about all the absurd and sort of untenable consequences that would flow from that proposition. Suppose a child's in DCF custody and the DCF worker or official wishes to invoke some purported First Amendment entitlement to record the meeting over the parent's or even the student's fierce objection. Or for that matter, an attorney or consultant retained by the school district wishes to make a recording of the process so that they could publish it on their website. Think about the untenable consequences that would flow from that proposition in other contexts. I think the Court correctly underscored the difficulties associated with allowing a First Amendment... Counsel, with deference, I think you're evading Judge Selya's question. You offered to let him have a videotape, I'm sorry, an audio tape, but you drew the line at a videotape. Now, there may be reasons why a videotape discourages free and open discussion back and forth, but could you describe for me in this context of a special needs child what they are? I'm sorry, Your Honor. What's the difference if you were willing to allow an audio recording identifying each of the speakers, but you drew the line at a video recording? What is your objection to a video recording? I could offer my own extemporaneous comments on that. Obviously, that wasn't the subject of any dialogue or discussion or vetting in the record, but I think that it's perfectly appropriate from my perspective that a participant in the process would be less forthcoming or less self-conscious about how they appeared on camera or how facial expressions or mannerisms might be construed. The other point here, and it's a nuance, I'm not sure it's explicitly germane for purposes of Mr. Pitt's or evaluating Mr. Pitt's claims, but we're talking specifically about an IEP meeting that occurred via Zoom. So what was offered was the opportunity technically to record the session, as I understand it, subject to the supervisor that people wouldn't be required to activate their cameras. So as a practical matter, Mr. Pitt could readily have ascertained who was speaking, because on Zoom, as you're probably well aware, the speaker, the frame around the speaker's panel lights up every time that speaker is speaking. So it's readily apparent, not only would it be self-evident as a practical matter, because you'd hear the person's voice, but it's also obvious that you'd actually see the panel of the speaker flashing. So it would have been totally ascertainable. Well, you know, as Judge Selye said, all judges draw their own practical experiences of life, and we're expected to. So I noticed that in a number of Zoom meetings, a number of people decide not to turn their cameras on. They're content to talk, but they're not content to be photographed. Maybe that's privacy reasons. They don't want to be identified as members of this child's team, or they just don't want their images out in the public domain. But is there anything other than, that is kind of special to this setting? Is there anything that you know, which is, as you say, intensely confidential, that goes to the fact that they didn't want to appear on camera? What's the reason for that in this setting? Well, again, I think, you know, perhaps there's a human tendency to be less inclined to be subject to video recording than audio recording for, you know, probably are beyond my bailiwick. But I will also say that these, although this meeting occurred via Zoom, other IEP meetings routinely occur in person. And the concept of requiring the district to arrange for a video recording of an in-person IEP meeting would be very impracticable. For example, where is the camera supposed to be set up? Who's going to operate the camera? Will the camera be trained on the ground? How will that be guaranteed? These are also procedural questions that are totally unrelated to the First Amendment issue. When you say procedural, and I ask opposing counsel the question, isn't what he's claiming more of a due process? Again, it's not before us, but isn't this more due process? It sounds to me more due process than First Amendment. Exactly. No, I agree wholeheartedly. And this is really an IDEA claim. It's a claim of an improper... I'm sorry. I wanted to... I do not view this in due process terms. There may be an issue of compliance with regulations, but that is not the claim that is brought in front of us. And with all deference, you know, Justice Ginsburg once famously said that the due process clause was the source of a great deal of mischief, never intended by the founders of this country, as people use the phrase. So count me out on that one. If I could, I just want to... 30 seconds, please. I just want to underscore that nowhere in Mr. Pitta's presentation or briefing did he address the fact that, again, these cases, all the cases that address this issue provide for the filming of public officials performing their duties, mostly in the law enforcement context, in which there's sort of a heightened, as courts have acknowledged, a heightened need for it, because of the power that police officers wield to deprive people of their liberties. But the... The entitlement is to record public officials performing their duties in public spaces. No case has ever suggested that there's any entitlement to do that recording in a private setting. In fact, the cases have said just the opposite. The Alvarez case, upon which Mr. Pitta relies, explicitly acknowledged that civilian police confidential communications or private communications were outside the scope of that decision. The Glick case framed the issue as, the salient question is, whether there's a constitutionally protected right to film police officers performing their duties in public. Nor did the Project Veritas case intend in any manner whatsoever to disturb that paradigm or engraft some intermediate scrutiny requirement with respect to all cases involving a request to record. In fact, it left undisturbed portions of the lower court decision that acknowledged that the right to record doesn't exist in what the court called a private, non-public setting. So Mr. Pitta simply ignores that. No case supports the proposition that he requests this court arrive at, or the conclusion that it arrived at. So for these reasons, we respectfully request that the court issue an order affirming the District Court's ruling. Thank you. Thank you, Your Honors. I'd like to address a couple things very quickly here. First off, regarding the being allowed to record in a Zoom meeting, and the staff members keep their cameras off. I just want to point out that once the District Court issued the motion to approve the motion, we will continue to try to restrict any recording, audio, or video. Okay, so that's back to what you said originally, that your claim is for a First Amendment right to video record, and these alternatives aren't really in the case. Yes, Your Honor. And regarding the right to record being limited to a Zoom meeting, it's limited to what the District Court essentially equates public space to traditional public forum. But under Glick, the core holding is that the people have the right to record government officials for the purpose of uncovering governmental abuses. That that is a core First Amendment right. And under this scenario, with public school officials, there is no other way to record public space. All of the privacy rights, all of the people that attend these meetings have other regulatory, federal law, state law requirements to safeguard privacy. Those privacy rights belong to my son, myself, and my wife. It is up to us to then take that recording and decide how much of it we want it to be public, how much of it we want to protect. I don't shy away from my own combat-related post-traumatic stress. I'm proud of it, and I'm very proud of my son. And how he has handled his autism spectrum disorder. Thank you.